545 So.2d 864 (1989)
Samuel RIVERA, Appellant,
v.
STATE of Florida, Appellee.
No. 71026.
Supreme Court of Florida.
June 29, 1989.
Mily Rodriguez, Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and Fariba Komeily, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Samuel Rivera appeals his conviction for first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm Rivera's convictions and sentences.[1]
On November 6, 1986, Samuel Rivera and his brother were en route to the Palm Springs Shopping Mall in Hialeah by bus when Rivera's brother purchased a semiautomatic pistol contained in a blue duffel bag. After their arrival, the two entered a Dollar General Store adjacent to the mall. While his brother watched the store employees in the main part of the store, Rivera went into a storage area. After Rivera ransacked the storage area and pried open an unused cash register, both men left the store. Acting on information supplied by suspicious customers, two policemen soon located Rivera and his brother in the mall's parking lot. When the officers began to question the men, Rivera grabbed the blue *865 bag containing the gun and the two brothers ran in different directions. Officer Emilio Miyares chased Rivera into the mall and eventually caught up with him after Rivera tried to escape through doors that could not be opened. The two fell to the ground and, during the ensuing struggle, Rivera shot Miyares with the officer's gun.[2] Witnesses testified that the officer was shot while he was kneeling on the floor with his hands upraised.
Immediately after the shooting, Rivera ran out of the mall and commandeered a car by forcing a woman, her young child, and her elderly mother out of their automobile at gunpoint. Rivera then sped off in the car, driving around rush-hour traffic onto the sidewalk, until he eventually crashed into a parked car. He then ran on foot to a house and hid under a table on the back patio where he was eventually located by the police K-9 unit. After a struggle with the dog, during which Rivera fell and hit his head, he was arrested. Rivera later claimed that he shot Miyares in self defense after the officer hit him in the head with the gun. However, eyewitnesses testified that they never saw Miyares hit Rivera with anything and that Rivera did not have any blood on him when he ran from the scene of the shooting. Additionally, no blood was found inside the stolen car which had a white leather interior.
The jury found Rivera guilty of first-degree murder and recommended the death penalty by a seven-to-five vote. Finding six aggravating circumstances and no mitigating circumstances, the trial judge sentenced Rivera to death.[3]
Rivera does not attack the propriety of the guilt phase of his trial. However, he raises six issues concerning the penalty phase, only three of which merit our discussion.[4] The first concerns "whether the trial court erred in limiting the consideration of mitigating circumstances to factors enumerated under section 921.141 solely and not advising the jury that it could consider non-statutory mitigating circumstances... ." This contention is utterly without merit. The court gave the current standard jury instruction which stated that the jury could consider "[a]ny other aspect of the defendant's character or record, and any other circumstances of the offense." Both the prosecutor and defense counsel discussed nonstatutory mitigating circumstances. In the sentencing order, the trial court specifically concluded that there were no nonstatutory mitigating circumstances.
Rivera also argues that the evidence did not support the finding that the killing was committed in a cold, calculated, and premeditated manner. In Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), we defined "calculation" as "a careful plan or prearranged design." The evidence in this case indicates that this killing was of spontaneous design. Officer Miyares was shot during a struggle after he chased and cornered Rivera in the main part of the mall. Had Rivera intended to kill the officer, he could have easily done so from the start when he had in his possession the semiautomatic weapon that he snatched from his brother prior to the chase. While there was no moral or legal justification for the killing, we are not persuaded that the facts of this crime rise to the level of heightened premeditation necessary to sustain this finding. Therefore, we reverse the trial court's finding that the *866 murder was cold, calculated, and premeditated.
Rivera also challenges the finding that the murder was especially heinous, atrocious, and cruel. In State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), this Court stated:
It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim.
The facts of the instant case are similar to those of Brown v. State, 526 So.2d 903 (Fla.), cert. denied, ___ U.S. ___, 109 S.Ct. 371, 102 L.Ed.2d 361 (1988), which involved a police officer who was shot two times in the head after receiving a gunshot to the arm. We held in that case that the murder was not heinous, atrocious, and cruel because "an instantaneous or near-instantaneous death by gunfire ordinarily" is not a heinous killing. Id. at 907. Here, Miyares was shot a total of three times with one wound to his arm and two wounds to his chest. Witnesses testified that all three shots were fired within approximately sixteen seconds of each other. While Miyares did linger for a few moments after the fatal shots were fired, this murder was not accompanied by additional acts setting it apart from the norm of capital felonies and the evidence did not prove that it was committed so as to cause the victim unnecessary and prolonged suffering. Consequently, we reject the trial court's finding that this murder was especially heinous, atrocious, and cruel.
However, we are convinced that even without these two aggravating circumstances, there was no reasonable likelihood of a life sentence being imposed because of the existence of four other valid aggravating circumstances and no mitigating circumstances. See Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Therefore, we affirm Rivera's conviction for first-degree murder and sentence of death, as well as his convictions and sentences for the additional crimes committed in conjunction with this murder.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The jury also convicted Rivera of armed robbery of a firearm; armed robbery of a motor vehicle; attempted armed robbery; armed burglary; carrying a concealed firearm; and possession of a firearm while engaged in a criminal offense. He was sentenced to a total of 301 years imprisonment for these offenses. Rivera does not challenge these convictions and sentences.
[2] Rivera fired five shots. Three of them struck Officer Miyares. Another went through an occupied store window, and the fifth lodged in the floor of the shopping mall.
[3] The aggravating circumstances were that (1) the defendant was previously convicted of a violent felony (aggravated assault upon a police officer); (2) the defendant knowingly created a great risk of death to many persons; (3) the murder was committed while the defendant was engaged in flight after the commission of an attempted robbery and burglary; (4) the murder was committed for the purpose of avoiding lawful arrest; (5) the murder was especially heinous, atrocious, and cruel; and (6) the murder was cold, calculated, and premeditated.
[4] The other three issues are (1) trial counsel's ineffectiveness in failing to introduce nonstatutory mitigating evidence; (2) allegedly improper remarks made by the prosecutor; and (3) the trial court's failure to advise the jury during deliberations of the minimum time to be served on the charges other than first-degree murder.