613 So.2d 408 (1992)
Harold Gene LUCAS, Appellant,
v.
STATE of Florida, Appellee.
No. 78118.
Supreme Court of Florida.
December 24, 1992.
Rehearing Denied March 5, 1993.
James Marion Moorman, Public Defender and Robert F. Moeller, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
*409 Robert A. Butterworth, Atty. Gen. and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Harold Gene Lucas appeals the death sentence imposed on him on resentencing. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution and affirm the sentence.
A jury convicted Lucas of the first-degree murder of his sixteen-year-old former girlfriend and the attempted murder of two of her friends and recommended that he be sentenced to death. This Court affirmed his convictions, but ordered that he be resentenced. Lucas v. State, 376 So.2d 1149 (Fla. 1979). Since then, we have remanded several more times for resentencing, the latest being Lucas v. State, 568 So.2d 18 (Fla. 1990).[1] In our most recent opinion we held that the trial court's written findings in support of the death penalty were not sufficiently clear and directed the court to reconsider and rewrite those findings.
For resentencing the trial court allowed Lucas to submit his prison records and a postsentence investigation report. On March 15, 1992 Lucas filed a memorandum with the trial court, arguing against the applicability of various aggravators, complaining about not being allowed to present more witnesses and the court's refusal to order a presentence investigation (PSI), recounting the testimony presented to the jury at the 1987 resentencing, and listing fifteen possible mitigators. The state filed its answer on May 7, 1991, the day set for sentencing. The judge postponed sentencing for a week so that he could study the state's response and stated: "This Court feels most strongly that in this of all cases, it must be abundantly clear that a reasoned weighing of all aggravating and mitigating circumstances has [been] done." On May 14, 1992 the judge stated that he had reread and studied the record as well as the memoranda filed by Lucas and the state and that the prison records had been received. After listening to each side's argument and to a statement from Lucas, the judge read the findings he had written and sentenced Lucas to death.
As his first point on appeal, Lucas argues that the trial court erred by refusing to allow him to present testimony from additional witnesses and by refusing to have a PSI prepared. We disagree.
In our last opinion we remanded "for reconsideration and rewriting of the findings of fact." Id. at 24. As we further directed:
Lucas should inform the court of the specific nonstatutory mitigating circumstances he wants the court to consider, and the court may permit both sides to present argument regarding those circumstances. There is no need to empanel a new jury.
Id. We did not direct that a new sentencing proceeding be conducted or that further evidence be received. The trial judge followed our order, and we find no error in his refusal to allow the presentation of additional testimony.
As stated before, the judge sentenced Lucas to death immediately after hearing the parties' arguments. Lucas now argues that the judge erred by preparing the findings of fact prior to the hearing and that, instead, the judge should have listened to the arguments, dismissed the parties, prepared his findings, and then reconvened the proceedings to impose sentence. We disagree.
We told the judge that he "may permit" argument by the parties, but did not direct that he had to do so. The judge had two months in which to study Lucas' memorandum and stated that he had done so, rereading the record and studying every case cited. The effort and consideration given by the judge are well reflected in his eighteen-page order, and we see no abuse of discretion in his having prepared the sentencing order prior to the May 14th hearing.
*410 Lucas also argues that the judge disregarded three possible mitigators[2] that he argued on May 14th. He did not, however, list these items in his memorandum. The judge mentioned at least two of them prior to imposing sentence. That they are not included in the sentencing order is more indicative of the judge's conclusion that they did not require revising the order rather than that the judge ignored them. See Palmes v. State, 397 So.2d 648 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981). Any failure to consider these items, however, would be harmless error.[3]
We ordered resentencing because the findings of fact were not sufficiently clear. Lucas now argues that the findings are still not clear and that the judge did not give proper consideration to the mitigating evidence. Our review of the record, however, shows this claim to have no merit.
It is within the trial court's discretion to decide whether a mitigator has been established, and the court's decision will not be reversed merely because an appellant reaches a different conclusion. Sireci v. State, 587 So.2d 450 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1500, 117 L.Ed.2d 639 (1992). Moreover, whether a mitigator has been established is a question of fact, and a court's findings are presumed correct and will be upheld if supported by the record. Campbell v. State, 571 So.2d 415 (Fla. 1990).
The trial judge found that two aggravators, previous conviction of a violent felony and committed in a heinous, atrocious, or cruel manner, had been established. He then conscientiously reviewed each proposed mitigator in light of the facts.[4] Although he found that several mitigators had been established, the judge also found that they could not be accorded enough weight to overcome the aggravators and, thus, mitigate the sentence. The judge's findings are supported by competent, substantial evidence and we see no error in his consideration of the mitigating evidence.
Lucas makes three attacks on the heinous, atrocious, or cruel aggravator: 1) the aggravator itself is unconstitutionally vague; 2) the jury instruction on this aggravator was unconstitutionally vague; and 3) the facts do not establish this aggravator. We have held that the aggravator itself is not vague, Smalley v. State, 546 So.2d 720 (Fla. 1989), and Lucas has presented nothing to change that conclusion. The trial court gave an expanded instruction on this aggravator, not the standard instruction invalidated in Espinosa v. Florida, *411 ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), and Lucas did not object to the form of the instruction as given. Thus, not only is his second claim meritless, it also has not been preserved for appeal. Finally, the facts show the murder to have been heinous, atrocious, or cruel.[5] Clearly, this murder was more than a simple shooting, and we affirm the trial court's findings regarding the aggravators.[6]
Although Lucas asked that the postsentence investigation report be entered into the record, he also asked that any victimimpact statements not be considered. Now, he argues that he should be resentenced because the judge may have been influenced by those statements. We find no merit to this argument because there is not even a hint that the judge considered or relied on the statements in determining Lucas' sentence.
Finally, we reject Lucas' claim that the death sentence is a disproportionate penalty for this murder. The aggravators clearly outweigh the mitigating evidence, and the facts clearly show that this murder is within the class of killings for which the death penalty may be imposed. Therefore, we affirm the trial court's sentencing Lucas to death.
It is so ordered.
*412 BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Our other opinions on this case are Lucas v. State, 490 So.2d 943 (Fla. 1986), and Lucas v. State, 417 So.2d 250 (Fla. 1982).
[2] Lucas' age of twenty-four years, the victim's intoxication, and the victim's threat against Lucas.
[3] As to Lucas' age being a mitigator, we have previously held that "a sentencing court may decline to find age as a mitigating factor in cases in which the defendants were twenty to twenty-five years old at the time their offenses were committed." Scull v. State, 533 So.2d 1137, 1143 (Fla. 1988), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989). On direct appeal we found the victim's possible drug use irrelevant. Lucas v. State, 568 So.2d 18, 22 (Fla. 1990).
[4] For example, in discussing the statutory mental mitigators the court found "other than the conclusion of Dr. Sprehe, that there is no credible evidence which reasonably established" a mitigator because "the action of the defendant on the days preceding the murder and on the evening of August 13, 1976 tend to undermine and discredit the ultimate opinions of the psychiatric expert." The court went on to comment: "The evidence in this case clearly establishes that the defendant in the days preceding this incident, and in the hours before its actual commission, evidenced a clear pattern of purposeful behavior sufficient to indicate his capacity to appreciate the criminality of his conduct and his ability to conform to the requirements of law." In considering Lucas' remorse the court found that his "expressed caring for [the victim] defies logic and reason and is completely contradicted by the overwhelming evidence of his actions" and that any remorse was "more for his legal circumstances than for the underlying offense." On the claimed physical and emotional abuse the court found that the postsentence investigation report's reference to such abuse "was vague and lacked sufficient specificity to establish that" Lucas had been abused. About the claims that Lucas was a nice person and held gainful employment, the court found that these attributes were not exemplary and were insufficient to overcome the aggravators.
[5] As found by the court:

[D]uring several days preceding [the victim's] murder the defendant communicated threats which, based upon the testimony and evidence surrounding events leading up to the fatal event, were reasonably interpreted by the victim to be death threats. The evidence establishes that the victim was cognizant of these threats and justifiably terrified by threats which involved the use of weapons. The defendant continued to threaten her during the hours preceding the murder. It is apparent from the victim's action in seeking the company of friends, the availability of defensive weapons, and the possible concealment of her vehicle, that she was taking steps out of fear and apprehension of a possible attack on the evening she was murdered. From these circumstances the Court concludes that the victim was aware that she was in mortal danger and reacted to the tremendous fear created by the defendant's threats.
The defendant sought the victim out at her residence where he had previously been arrested the preceding week for trespassing after a warning by law enforcement officers to stay away from [her]. The evidence establishes beyond a reasonable doubt that the defendant purposely and knowingly armed himself in preparation for this crime and stalked [the victim] at her home and carried out his murderous attack in a manner such that [she] was not able to reasonably defend herself. The defendant fired several shots from the dark shadows of the night outside of [her] residence, striking her in the back and severely wounding her. It is further established beyond every reasonable doubt that the victim did not die instantaneously nor painlessly, but that after these initial shots the defendant pursued the victim and proceeded to savagely beat her as she pled for her life with words to the effect, "Oh God, don't kill me, Oh God, leave me alone." The 16 year old girl fought in defense of her life and incurred defensive wounds which were not present prior to this crime. The severely wounded victim, who had every reasonable basis to be in great fear for her life based upon prior threats from the defendant, was now reduced to pitifully pleading for her life as the 24 year old defendant beat her and inflicted further injuries upon her. The Court finds that the evidence establishes beyond a reasonable doubt that [she] would have been in great physical pain from the gunshot wounds to the back and the savage beating she was receiving, as well as extreme mental anguish with the realization that the defendant was in fact carrying out his threats and that her life was in mortal danger.
With the 16 year old victim having endured these horrible circumstances of being threatened, wounded and beaten, the defendant then fired another series of shots which included the fatal shot. This shot struck the victim in the forehead at such an angle to establish beyond reasonable doubt the physical inferiority of the victim's position and further establishing that the victim, severely injured and overpowered was continuing to beg for her life. Although it is established by Dr. Graves' testimony that the victim was rendered unconscious instantaneously by the shot he identified as wound No. 1, it is more importantly apparent beyond a reasonable doubt that this wound was not received until the victim had endured prior gunshot wounds and a severe beating with the full realization that the defendant intended to murder her. This was not an instantaneous nor painless death, but a savage and brutal death which was torturous to the victim upon whom a high degree of pain had been inflicted by the defendant with an utter indifference to and savage enjoyment of the suffering [she] was undergoing.
[6] Lucas does not challenge the other aggravator, prior conviction of a violent felony, and it, too, has been established by the evidence.