621 So.2d 1361 (1993)
George J. TREPAL, Appellant,
v.
STATE of Florida, Appellee.
No. 77667.
Supreme Court of Florida.
June 10, 1993.
Rehearing Denied August 23, 1993.
*1362 Ronald N. Toward, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
George J. Trepal (Trepal) appeals his first-degree murder conviction and death sentence. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
Trepal was convicted of the first-degree murder of Peggy Carr.[1] Trepal also was convicted of six counts of attempted first-degree *1363 murder (other members of the Carr household), seven counts of poisoning food or water, and one count of tampering with a consumer product (Coca-Cola).[2] The jury recommended the death penalty for the murder by a vote of nine to three, which the trial judge imposed.
The judge found three statutory aggravating factors:[3] previously convicted of a another capital felony or of a felony involving the use or threat of violence (the contemporaneous attempted-murder convictions); great risk of death to many persons (introducing poisoned Coca-Cola into the multiple-children Carr household); and committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (carefully removing the cola bottle caps, dissolving the poison in solution, adding the solution to the bottles, carefully replacing the caps, and then secreting the cola into the Carr household). He found one statutory mitigating factor[4] (no significant history of prior criminal activity  only one conviction for illegal manufacture of amphetamines); and several nonstatutory mitigating factors (happy childhood and marriage; high intelligence; above-average adjustment to prison life; and kind and generous). The court imposed, concurrent to the death penalty, a ninety-year sentence for the remaining offenses.
Trepal raises seven issues on appeal: 1) the evidence was insufficient to support the conviction for first-degree murder; 2) the bottle of poison found in Trepal's garage should have been suppressed; 3) evidence[5] linking Trepal to the crime was erroneously admitted; 4) Trepal did not "cause" Peggy Carr's death, rather the treating physician did (raised for the first time on appeal); 5) counsel's waiver of jury instruction on maximum and minimum penalties rendered him ineffective; 6) failure to give an instruction on circumstantial evidence was an abuse of discretion; and 7) the death penalty is improper.[6]
Trepal argues that the trial court erred in denying his motion for judgment of acquittal because the State failed to exclude every reasonable hypothesis of innocence. We disagree. We said in Cochran v. State, 547 So.2d 928, 930 (Fla. 1989):
[T]he question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, the verdict will not be reversed on appeal. The circumstantial evidence standard does not require the jury to believe the defense version of facts on which the state has produced conflicting evidence, and the state, as appellee, is entitled to a view of any conflicting evidence in the light most favorable to the jury's verdict.
(Citations omitted.) We have defined and explained premeditation thus:
Premeditation can be shown by circumstantial evidence. Premeditation is a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit of reflection, and in pursuance of which an act of killing ensues... . Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable *1364 the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it insofar as the life of his victim is concerned.
Sireci v. State, 399 So.2d 964, 967 (Fla. 1981) (citations omitted), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982).
We find the evidence sufficient to support a verdict of premeditated murder. There is substantial, competent evidence that prior to the death of Peggy Carr, the Carrs and Trepals, neighbors in Alturas, Florida, had had numerous altercations. Trepal once threatened one of the Carr children by saying, "I'm going to kill you." Shortly before Peggy Carr, her son, Duane, and her stepson, Travis, were hospitalized for thallium poisoning in October 1988, the Carrs received a note threatening: "two weeks to move out of Florida forever or else you will all die." Thallium-laced Coca-Colas were found in the Carr household, after weeks of searching, by state and federal environmental agencies. (The Carrs had vacated the house during the week of the hospitalizations and never had moved back.) When their next-door neighbor, Trepal, was asked why anyone would want to poison the family, he said, "to get them to move out, like they did."
Trepal had researched and written a pamphlet about voodoo for a Mensa[7] murder weekend, which read, in part:
Few voodooists believe they can be killed by psychic means, but no one doubts that he can be poisoned. When a death threat appears on the doorstep, prudent people throw out all their food and watch what they eat. Hardly anyone dies from magic. Most items on the doorstep are just a neighbor's way of saying, "I don't like you. Move or else!"
The themes (move or else) in the threatening note and in the voodoo pamphlet were similar.
Trepal told Goreck, an undercover agent, that the poisonings were "just a personal vendetta." Contrary to Trepal's assertion that he went to his wife's office every day, in fact he stayed at home or went to his own office each day. There was a window of time when the Carr household was unoccupied and it was undisputed that Trepal was able to surveil the household. There was testimony that the Carr house often was left unlocked. The Trepals and Carrs shared a water supply; Trepal's presence on the Carr property thus would not have been unusual.
The evidence at trial showed that Trepal is extremely intelligent, and has a highly developed knowledge of chemistry. Evidence also was presented that thallium is a by-product of amphetamine production and Trepal was the chemist for an amphetamine laboratory in the 1970s.[8] Thallium is a poison so toxic[9] that it has been banned by the Food and Drug Administration since 1982. Because of its toxicity, its sale and distribution are controlled and recorded, and it is not available to the general public, but only to universities and research centers. A bottle of thallium was found in Trepal's garage in Alturas. A hand-assembled journal, bearing Trepal's prints and containing information on poisons, including thallium, and data on the autopsy detection of poisons, was found in Trepal's Sebring home. A great many chemicals were found there, along with chemical equipment. The Agatha Christie novel, Pale Horse, dealing with murder by introducing thallium into a household, also was found there.
Evidence was presented that of the chemical forms of thallium that exist, only one form can be introduced into Coca-Cola without producing noticeable changes in the drink. Evidence was presented that the bottle caps had been pried off the Coca-Cola bottles. Evidence was introduced that worldwide, Coca-Cola found no *1365 other incidences of tampering with the product, and received no ransom note after the poisoning. Evidence also was presented that a bottle-capping machine was seen among the items in the Trepals' garage when they moved into their Alturas home.
The evidence thus showed that Trepal had motive; opportunity; means, including knowledge, poison, and equipment; and had made statements tying him to the crime. We find this evidence sufficient to support the jury's verdict.
Trepal raises as his second issue that the bottle of thallium found in his garage should have been suppressed, because he had a reasonable expectation of privacy there. The denial of a motion to suppress is presumed correct. McNamara v. State, 357 So.2d 410 (Fla. 1978). A reviewing court must interpret the evidence in the light most favorable to sustaining the trial court's ruling. State v. Riehl, 504 So.2d 798 (Fla. 2d DCA), review denied, 513 So.2d 1063 (1987). "It is ... the totality of the circumstances in any given case which must be looked to in determining whether a defendant had a reasonable expectation of privacy in the premises searched." State v. Suco, 521 So.2d 1100, 1102 (Fla. 1988).
The trial judge made the following findings supporting the denial of Trepal's motion. Trepal and his wife moved from their home in Alturas to Sebring in November 1989. Trepal personally supervised the movers and specifically identified the items to be moved and the items to be left behind; the bottle of poison was among the items to be left behind. Trepal and Goreck, an undercover agent, entered into an oral rental agreement on December 5, 1989 and on December 7 Goreck mailed a $350 money order as payment for the first month's rent. On December 12 Trepal informed Goreck that he had cashed the money order and that she could move in immediately; although he indicated that the garage still needed some "cleaning out," the rental agreement contained no reservations concerning Goreck's occupancy. On December 12 Goreck, other law enforcement officers, and crime scene technicians entered the unlocked garage and found a bottle, later identified as containing thallium, in a drawer of a workbench. Trepal, like Goreck, enjoyed woodworking  the garage was used as a woodworking shop and during the spring of 1989, in discussions about the sale of the property, Goreck and Trepal discussed the use of the garage for that purpose. Goreck was shown the interior of the garage. Although Trepal had commented about returning to the property to do repairs and cleaning, between the date of that comment and the date of his arrest there was no evidence that Trepal had ever returned to the property. Trepal never reserved a right of possession nor did he exercise such a right.
There also is evidence in the record that Trepal told the movers that what was left behind in the garage was trash. The trial court concluded that Trepal had no reasonable expectation of privacy in the premises searched. We conclude, based on the totality of the circumstances, that the trial court correctly denied the motion to suppress.
Trepal alleges that evidence was admitted[10] in violation of the Williams rule.[11] We find no Williams rule violation. While testimony was admitted that during the 1970s Trepal was involved in an amphetamine laboratory, the fact that Trepal was convicted of a crime in connection with this activity was not introduced. A witness described Trepal as the chemist and "mastermind" of the lab. The testimony was admitted to show Trepal's knowledge of *1366 chemistry and poisons  to show that Trepal had the requisite knowledge to commit the instant crimes. The evidence introduced was relevant and properly admitted.
Trepal raises as his fourth point that the court below lacked evidence that he caused the death of Peggy Carr; rather, her doctors caused her death by removing her from life-support systems. This claim was not presented to the trial judge and therefore is barred.[12]
Trepal's fifth point on appeal is that the trial court committed fundamental error by failing to charge the jury, during the guilt phase of the trial, on the maximum and minimum penalties for first-degree murder. This Court, in Wright v. State, 596 So.2d 456 (Fla. 1992), held that a penalty instruction is not required at the end of the guilt phase of a capital trial, even if requested.
Trepal argues as his sixth point that it was error to fail to give his requested circumstantial evidence instruction in view of the court's alleged failure to properly instruct on reasonable doubt. We have said that a circumstantial evidence instruction is unnecessary if the jury is properly instructed on reasonable doubt and the burden of proof. In re Standard Jury Instructions, 431 So.2d 594 (Fla.), modified, 431 So.2d 599 (Fla. 1981). We find that the instruction given,[13] although not the verbatim standard instruction, properly instructed the jury on reasonable doubt; thus, no circumstantial evidence instruction was required.
Trepal's seventh point on appeal consists of five subparts, each dealing with the penalty phase of his trial. The first is that it was error for the trial court to find the aggravating factor "previously convicted of another capital felony or of a felony involving the use or threat of violence to the person,"[14] because the factor resulted from the same incident that resulted in Carr's death and because he had no direct contact with the victims in this case. We reiterated in Pardo v. State, 563 So.2d 77, 80 (Fla. 1990), that as long as two crimes involve multiple victims, then this aggravating circumstance applies notwithstanding the fact of contemporaneous convictions. Trepal was convicted of the attempted murder by poison of six persons in addition to the murder of Peggy Carr. Two of these were hospitalized and one almost died. See Johnson v. State, 438 So.2d 774, 778 (Fla. 1983) (contemporaneous convictions for attempted *1367 murder by firing gunshots proper basis for finding prior violent felony).
Trepal raises as his second subpart that it was error to find the aggravating circumstance "great risk of death to many persons."[15] He argues that only a possible risk, a mere speculation, existed and even the full bottles of cola were not proven to contain a deadly dose of poison, so great risk of death was not proven. He argues that only four persons resided in the Carr home, the other three lived in the detached apartment; therefore, this is not many persons. He also argues that as the number of persons who consumed the cola increased the risk of death decreased because the more people among whom it was divided the less the likelihood that a sufficiently large quantity of poison would be consumed. We reject these arguments. The evidence showed that seven family members lived on the Carr property at all times, other family members visited regularly, and Trepal knew that "there were a lot of people coming and going" on the Carr property. The contents of the full cola bottles contained lethal doses of thallium. The contents of the empty cola bottles killed and seriously injured members of the Carr household. Great risk of harm to many persons has been shown. Raulerson v. State, 420 So.2d 567 (Fla. 1982).
Trepal next argues that the "great risk" aggravating circumstance was improperly doubled with the "prior violent felony" aggravating circumstance. Prior violent felony may involve great risk of harm to many persons but need not necessarily do so. Each of these circumstances deals with a different aspect of the crime; therefore, each is proper. Toole v. State, 479 So.2d 731, 733 (Fla. 1985).
Trepal asserts that his murder was not "committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification,"[16] because the facts do not show the heightened premeditation necessary for this aggravating circumstance to apply, or alternatively, the murder was justified because the Carrs were troublesome neighbors. We reject this specious reasoning. We have said that this circumstance can be shown by "such facts as advance procurement of a weapon, lack of resistance or provocation, and the appearance of a killing carried out as a matter of course." Swafford v. State, 533 So.2d 270, 277 (Fla. 1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989). We also have said that the heightened premeditation required for the application of this circumstance can be shown "if the murder was committed in a manner that was cold and calculated." Provenzano v. State, 497 So.2d 1177, 1183 (Fla. 1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987). The facts of the instant murder, recited above, amply demonstrate the applicability of this aggravating circumstance.
Finally, we find that the instant sentence is proportional to other capital cases where the sentence has been upheld. See Buenoano v. State, 527 So.2d 194 (Fla. 1988) (death sentence upheld where murder was committed by methodical poisoning).
Accordingly, we affirm Trepal's convictions and sentences.
It is so ordered.
BARKETT, C.J., and SHAW, KOGAN and HARDING, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
GRIMES, J., recused.
McDONALD, Justice, concurring in part, dissenting in part.
This is a circumstantial evidence case. It is intriguing and frightening. I agree that if there is competent substantial evidence from which the jury could exclude all reasonable hypotheses of innocence, then my role as an appellate judge requires me to affirm on the issue of the sufficiency of the evidence. I conclude that this test has *1368 been met as it relates to the defendant's placing the chemical product known as thallium in some Coca-Cola bottles in the Carr household. The evidence also shows that Trepal knew of the poisonous nature of thallium. Even so, I do not believe the evidence susceptible to the sole conclusion that murder, and murder only, was on Trepal's mind when he performed his acts. One can easily conclude that his intent was to scare or cause sickness or discomfort in an effort to get the Carrs to move away. The evidence is insufficient to conclusively find that Trepal had a clear and conscious intent to effect the death of anyone. Hate, ill will, and spite are shown, but one can conclude that his acts were perpetrated in an imminently dangerous manner, evincing a depraved mind, without an intent to kill. In a purely circumstantial evidence case, which this is, the jury does not have the luxury of adopting one permissible conclusion over the others.
I agree with the majority that no reversible error was shown in the other guilt issues raised. Some judges may have given the special circumstantial evidence charge, but I cannot say the declination to do so is reversible.
Thus, I would vacate the first-degree conviction and direct the entry of second-degree murder in its stead.
OVERTON, J., concurs.
NOTES
[1] Peggy Carr first showed symptoms of poisoning on October 23, 1988; she lapsed into coma shortly thereafter, from which she never emerged. She was removed from life support systems on March 3, 1989.
[2] Trepal has not challenged these convictions. We find competent substantial evidence in the record to support them and we affirm them.
[3] § 921.141(5)(b), (c), (i), Fla. Stat. (1987).
[4] Id. § 921.141(6)(a).
[5] This evidence included Trepal's knowledge of poisons, threats to the Carr children, leadership role in an illegal amphetamine-manufacturing laboratory, reaction to hostile confrontations, preference for Coca-Cola soft drinks, participation in murder-mystery scenarios which included threatening notes and death by poisoning; and evidence that the Carrs received a threatening note before the family was poisoned.
[6] This claim included claims that aggravating circumstances were improperly found and were outweighed by mitigating circumstances.
[7] Mensa is an organization open for membership to persons with intelligence quotients in the top two percent of the general population.
[8] Trepal was convicted of conspiracy to manufacture methamphetamine in 1975 for this activity, but the fact of the conviction was not presented to the jury.
[9] There is no known antidote to thallium poisoning.
[10] Trepal asserts that all the evidence he challenged was admitted. This is factually incorrect. The trial court denied the admission of evidence of the death of the Carrs' dogs, which showed signs similar to thallium poisoning, and evidence of alleged poisonings Trepal had committed in college by putting poison on his door knob so that anyone coming into contact with it would be affected, and evidence of an alleged chemical poisoning of a neighbor (other than the Carrs) to cause the neighbor to move out.
[11] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); see also § 90.404(2), Fla. Stat. (1987).
[12] Even if this issue had been preserved, it is meritless. Johnson v. State, 64 Fla. 321, 323, 59 So. 894, 895 (1912).
[13] The following instruction was given:

Mr. Trepal has entered a plea of not guilty to these charges. And that means that you must presume or believe him to be innocent. The presumption stays with the defendant as to each material allegation of the charges contained in the indictment through each stage of the trial until the presumption is overcome by the evidence.
To overcome a presumption of innocence the State has the burden of proving to you two things:
That the crimes with which the man is charged were in fact committed, and that he is the person that committed the crimes.
Mr. Trepal is not required to prove anything.
Regarding the concept of reasonable doubt, it is defined more in the negative than any other way. In other words, we're telling you what a reasonable doubt is not.
A reasonable doubt is not a possible doubt, it is not a speculative doubt, it is not an imaginary doubt, it's not a forced doubt. And that sort of a doubt should not influence you to return a verdict of not guilty if in your own mind you have an abiding conviction that Mr. Trepal is guilty. But, if, after carefully comparing, considering, and weighing this evidence, you do not have in your own mind an abiding conviction that Mr. Trepal is guilty, or, if, having a conviction at all, it is one which wavers and vacillates, is not stable, then this case has not been proven to you beyond a reasonable doubt, and you should return a verdict of not guilty.
It is to the evidence introduced in this trial, and to it alone, that you are to look for proof.
A reasonable doubt as to Mr. Trepal's guilt may arise from the evidence, it may arise from conflicts in the evidence, or it may arise from lack of evidence.
If you have a reasonable doubt, you should find the defendant not guilty. If you have no reasonable doubt, you should find the defendant guilty.
[14] § 921.141(5)(b), Fla. Stat. (1987).
[15] § 921.141(5)(c), Fla. Stat. (1987).
[16] § 921.141(5)(i), Fla. Stat. (1987).